# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Mohammed H., <br><br> Petitioner, <br><br> v. <br><br> Donald J. Trump, *in his official capacity as President of the United States*; Pamela Bondi, *in her official capacity as Attorney General of the United States*; Peter Berg, *in his official capacity as Saint Paul Field Office Director, United States Immigration and Customs Enforcement*; Jamie Holt, *in her official capacity as St. Paul Agent in Charge for Homeland Security Investigations for U.S. Immigration and Customs Enforcement*; Todd Lyons, *in his official capacity as Acting Director, United States Immigration and Customs Enforcement*; Kristi Noem, *in her official capacity as Secretary of the United States Department of Homeland Security*; Marco Rubio, *in his official capacity as Secretary of State*; Ryan Shea, *in his official capacity as Freeborn County Sheriff*; and Mike Stasko, *in his official capacity as Freeborn County Jail Administrator*, <br><br> Respondents. | Civ. No. 25-1576 (JWB/DTS) <br><br><br> **ORDER <br> FOR RELEASE ON BAIL <br> PENDING ADJUDICATION** |

Amanda S. Mills, Esq., Anupama D. Sreekanth, Esq., Joseph T. Dixon, III, Esq., and Rachel Dougherty, Esq., Fredrikson & Byron, P.A.; Benjamin Casper, Esq., and Teresa J. Nelson, Esq., American Civil Liberties Union of Minnesota; Hanne Margit Sandison, Esq., The Advocates for Human Rights; and Linus Chan, Esq., University of Minnesota Detainee Rights Clinic, counsel for Petitioner.

Ana H. Voss, Esq., United States Attorney's Office, counsel for Respondents Donald J. Trump, Pamela Bondi, Peter Berg, Jamie Holt, Todd Lyons, Kristi Noem, and Marco Rubio.

David John Walker, Esq., Freeborn County Attorney's Office, counsel for Respondent Ryan Shea.

---

This matter concerns the continued detention of Petitioner Mohammed H., a 20-year-old Bangladeshi national who remains in Immigration and Customs Enforcement ("ICE") custody at the Freeborn County jail in Albert Lea, Minnesota.

Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, asserting that his detention violates the First Amendment, the Fifth Amendment, and the Administrative Procedure Act. (Doc. No. 1 ¶¶ 83–101.) He also asserts a claim for release on bail pending adjudication of his claims. (*Id.* ¶¶ 102–05.) This Order resolves the request for temporary release only. The three remaining claims are reserved for future adjudication.

Petitioner specifically alleges that he is the latest in a coordinated campaign by federal executive agencies to arrest, detain, and ultimately deport international college students based on their protected speech. Petitioner refers to this campaign as "the Policy" throughout his allegations. (*Id.* ¶ 2.)

The named Respondents (collectively "the Government") include the federal and state officials responsible for creating the Policy and for applying it against Petitioner. (*Id.* ¶¶ 8–15.) In their view, this Court lacks jurisdiction to review immigration enforcement actions, and even if it did, Petitioner's claims fail. (Doc. No. 17.)

The record before the Court includes the Petition (Doc. No. 1), the Government's Answer (Doc. No. 17), Petitioner's Reply (Doc. No. 24), and multiple declarations and supporting exhibits from both sides. For the reasons that follow, Petitioner's request for

2

temporary release is granted.

## BACKGROUND

Petitioner is a college student at Minnesota State University, Mankato, who lawfully entered the United States in 2021 on an F-1 student visa. (Doc. No. 1-1, Petitioner Decl. ¶¶ 5–9.) On March 28, 2025, Department of Homeland Security ("DHS") officers followed Petitioner home after a class, then arrested him outside his home in front of his visiting parents, purportedly based on a visa revocation. (*Id.* ¶¶ 39–44.)

After Petitioner was taken for processing, his record was terminated from the Student and Exchange Visitor Information System ("SEVIS"), a federal database used to track international students. (*See* Doc. No. 1-3 at 4; Doc. No. 1-4) The termination included the following explanation: "Student is terminated pursuant to 237(a)(1)(C)(i) and 237(a)(4)(C)." (Doc. No. 1-4 at 4.)

Section 237(a)(1)(C)(i) of the Immigration and Nationalization Act ("INA") allows deportation for failure to maintain status. Section 237(a)(4)(C) allows deportation on certain foreign policy grounds. Petitioner claims that there is no lawful basis for him to have lost status, and that the Government uses the foreign policy ground to target foreign students who voice support for Palestinian human rights. (*Id.* ¶¶ 65–67.)

Executive Orders and public statements from federal officials indicate that the Government views commentary on Palestinian human rights as a foreign policy threat and a reason to initiate deportation proceedings against international students. (*See* Doc. No. 1 ¶¶ 18–20 (citing Exec. Order No. 14161, 90 Fed. Reg. 8451 (Jan. 30, 2025); Exec. Order No. 14188, 90 Fed. Reg. 8847 (Jan. 29, 2025)); *see also* Doc. No. 1-9.)

Petitioner's initial charging document, dated March 28, 2025, lists 237(a)(1)(C)(i) as the only pending charge. (Doc. No. 1-3 at 4.) The document also says Petitioner is amenable to deportation under INA § 237(a)(1)(B), which permits deportation based on violating the INA or any other federal law, or if the individual's visa has been revoked by the Secretary of State.

On April 1, 2025, Petitioner received an undated, unmarked letter, purportedly from the Department of State ("DOS"), informing him that "additional information became available after your visa was issued and your F-1 visa was revoked[.]" (Petitioner Decl. ¶ 49; Doc. No. 1-5.)

The Government has submitted some evidence of the interactions between DHS/ICE and DOS regarding Petitioner.[1] According to a Bureau of Consular Affairs Official, DHS/ICE wrote to DOS on March 22, 2025, "seeking the Department's determination as to whether [Petitioner]'s nonimmigrant visa should be revoked." (Doc. No. 19, Armstrong Decl. ¶ 4.) DHS/ICE "conveyed that [Petitioner] had been charged with assault in the fifth degree and disorderly conduct and requested the Department's assessment as to whether [Petitioner]'s conduct represented a threat to public safety." (*Id.*)

The next day, DOS issued a memo to DHS/ICE, writing that "in response to a request from DHS/ICE and the information from DHS/ICE that [Petitioner] has been

---

[1] The Department of State is the federal agency responsible for issuing and revoking visas under 8 U.S.C. § 1201(i). In the immigration enforcement context, coordination between DHS and DOS can occur when visa status is questioned, revoked, or used to justify removal proceedings.

4

charged by U.S. law enforcement officials with Assault-5th Degree-Misdemeanor, Disorderly Conduct and now poses a threat to U.S. public safety," Petitioner's F-1 visa was revoked, effective immediately. (Doc. No. 1-8 at 3.) DOS also elected to keep the revocation silent, based on its understanding that "DHS/ICE intends to immediately pursue removal of [Petitioner]." (*Id.*)

On April 9, 2025, an Immigration Judge ("IJ") conducted a bond hearing following Petitioner's arrest and initiation of removal proceedings. At the time, the pending charge was failure to maintain status. The IJ concluded that continued detention was not justified, finding Petitioner posed no danger to the community and could be safely released on a $7,500 bond to address any flight risk concerns. (Doc. No. 21-2, Voss Decl. Ex. 3 at 7–8.) The IJ's ruling followed consideration of Petitioner's criminal record, student status, and ties to the community. (*Id.*)

The Government presented no evidence at the bond hearing to indicate that Petitioner posed a danger or flight risk, and it has submitted no evidence since then justifying his arrest and continued detention. Instead, DHS promptly filed a notice of intent to appeal and invoked an automatic stay under 8 C.F.R. § 1003.19(i)(2), halting Petitioner's release without establishing any justifying facts addressing danger, flight risk, or other considerations. (Doc. No. 21-2 at 22–26.) Petitioner remains detained solely due to the operation of the baldly invoked stay.

On April 18, 2025, DHS added a charge under INA § 237(a)(1)(B) against Petitioner based on the allegation that "[o]n March 23, 2025, the United States Department of State revoked your F-1 student visa, effective immediately, pursuant to

5

authority in section 221(i) of the Immigration and Nationality Act, 8 U.S.C. 1201(i)." (Doc. No. 10-2 at 22; Doc. No. 20, Minner Decl. ¶ 10; Doc. No. 20-6.)

At the April 23, 2025 hearing before the IJ, DHS withdrew the original charge of removability under 237(a)(1)(C) without explanation, and instead elected to proceed with 237(a)(1)(B)—visa revocation—as the sole charge of removability. (Doc. No. 27, Roth 2d Decl. ¶¶ 8–10.)

Petitioner's next removal hearing is set for May 7, 2025. (*Id.* ¶ 11.) The parties' briefing on the bond appeal is due May 8, 2025. (Voss Decl. Ex. 3 at 1.)

## DISCUSSION

### I. Jurisdiction

As an initial matter, the Government asserts that habeas jurisdiction is lacking based on various "jurisdiction stripping" provisions in 8 U.S.C. §§ 1201(i), 1226(e), 1252(a)(5), 1252(b)(9), and 1252(g). But these jurisdictional arguments misconstrue Petitioner's habeas claims. Contrary to the Government's framing, Petitioner does not seek to end his removal proceeding or vacate the underlying executive determinations. Rather, he simply seeks to end his allegedly unlawful confinement.

The underlying discretionary acts are not presented for review on their merits, and Petitioner is not seeking review of a final removal order because one has not been issued. Therefore, none of the cited INA provisions preclude habeas jurisdiction here—which is consistent with rulings in other habeas cases arising from substantially similar underlying events and asserting substantially similar claims. *See, e.g.*, *Mahdawi v. Trump*, No. 2:25-cv-389, 2025 WL 1243135, at *4–8 (D.Vt. Apr. 30, 2025); *Ozturk v. Trump*, No. 2:25-cv-

6

374, 2025 WL 1145250, at *10–15 (D.Vt. Apr. 18, 2025). The heart and "historic purpose" of habeas review is to consider whether a person is detained pursuant to lawful authority, and if they are not, to relieve the unlawful detention. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

Habeas jurisdiction is not lacking here. Thus, the analysis turns to the *Martin* test for release pending adjudication.

## II. *Martin* Analysis

The standard governing interim release in a habeas case in this Circuit is set forth in *Martin v. Solem*, 801 F.2d 324 (8th Cir. 1986). Under *Martin*, to grant interim release the Court must find (1) a substantial federal constitutional claim that is not only clear on the law but also readily evident on the facts, and (2) the existence of exceptional circumstances justifying special treatment in the interests of justice. 801 F.2d at 329–30.

### A. Substantial federal constitutional claims

Petitioner has presented substantial First and Fifth Amendment claims that meet both the legal and factual threshold under *Martin*.

#### 1. First Amendment violations

Petitioner asserts that he was targeted by the Government because he spoke out against violence in Gaza and expressed support for Palestinian human rights on social media. Petitioner's First Amendment retaliation claim requires showing that (1) he engaged in protected activity; (2) adverse action was taken against him that would chill a person of ordinary firmness; and (3) a causal connection between retaliatory motive and the adverse action. *See Watson v. Boyd*, 119 F.4th 539, 550 (8th Cir. 2024).

Petitioner's commentary on events in Palestine is speech on a matter of public concern and therefore lies at the heart of First Amendment protection. *See Snyder v. Phelps*, 562 U.S. 443, 451–53 (2011) (recognizing matters of public concern include any matter of political, social, or other community concern, or a subject of legitimate news interest). Being detained by ICE interferes with Petitioner's ability to speak, and it is reasonable that losing one's freedom would chill an ordinary person from continuing to speak. *See Thurairajah v. City of Fort Smith, Ark.*, 925 F.3d 979, 985 (8th Cir. 2019).

As explained below, Petitioner's evidence shows a causal connection between the Government's retaliatory motive and his arrest and detention. Accordingly, the Government must show that it would have made the same decision even without the protected speech. *See Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007). The Government's evidence does not sufficiently dispel that Petitioner's speech prompted the enforcement effort. Accordingly, Petitioner's First Amendment claim is clear on the law and on the facts.

The record contains sufficiently clear evidence of viewpoint-based targeting for Petitioner's exercise of protected speech on a matter of public concern. Based on the Petition, supporting declarations, and publicly available records, Petitioner's arrest aligns with the publicly stated executive policy of targeting social media users who express support for Palestinian human rights and criticize violence in Gaza, as Petitioner had done. Critically, the Government has not supplied evidence of the reason why DHS/ICE contacted DOS about Petitioner on March 22, 2025. The Government readily explains the events *after* that initial communication, but not the events *preceding* it. Without rebuttal

evidence, the record supports a finding that Petitioner's speech—not his past misdemeanor—brought him to the Government's attention for enforcement.

The record also shows the Government cited different reasons at different times for its actions. The arresting agents cited visa revocation. The initial removal charge was failure to maintain status under § 237(a)(1)(A)(i). DHS initially cited failure to maintain status *and* foreign policy under § 237(a)(4)(C) as the reasons for terminating Petitioner's SEVIS record. Later SEVIS records list the termination reason as "OTHER - Individual identified in criminal records check and/or has had their visa revoked." (Doc. No. 1-6.) Petitioner's formal charges shifted to deportability under § 237(a)(1)(B) nearly a month after he was arrested. The Government has not fully explained its rationale at the time of visa revocation, its rationale for the SEVIS termination entries, or its rationale for altering the charges against Petitioner. As a result, it has not sufficiently rebutted Petitioner's evidence establishing the events as a sequence of reverse-engineered justifications for enforcement that was targeted against Petitioner and motivated by his speech.

The Government's declarations deny awareness of Petitioner's speech but do not rebut the timing or the absence of any contemporaneous explanation supported by record evidence for the enforcement action taken. Most relevant is the March 23, 2025 DOS memo that indicates (1) DHS/ICE—not DOS—initiated the scrutiny of Petitioner's visa eligibility; (2) DHS/ICE—not DOS—supplied the information that Petitioner had been "charged by U.S. law enforcement officials with Assault-5th Degree-Misdemeanor" and "now poses a threat to U.S. public safety"; and (3) DHS/ICE had *already told* DOS that it intends to immediately pursue removal, even before DOS revoked Petitioner's visa.

9

The March 23 memo raises more questions than it answers. The Government has not explained what prompted DHS to contact DOS about Petitioner in the first place. The memo oddly indicates that Petitioner is a *current* threat to public safety merely for being charged (not arrested or convicted) with misdemeanor assault two years in the past. The memo does not reflect any consideration of the facts underlying the charge, nor does it accurately represent that the misdemeanor charge was filed in 2023, that Petitioner was never arrested, and that Petitioner pled guilty and completed a stayed sentence in mid-2024. Rather than providing evidence of a lawful basis to act against Petitioner, the March 23 memo reinforces Petitioner's claim that DHS had already determined it would act to remove him, and the visa revocation came after as the purported legal justification.

The Government also refers to requests and communications without providing the requests or communications themselves. (*E.g.*, Doc. No. 19 ¶¶ 4–5, 7.) In the face of public evidence of a practice of targeting speech, these omissions are glaring and fail to rebut the evidence that the Government was motivated to arrest and detain Petitioner because he had spoken publicly about Palestine.

The Government ultimately argues that Petitioner's retaliation claim is precluded by the existence of a facially valid arrest basis—visa revocation under 8 U.S.C. § 1201(i). But that argument misinterprets the nature of Petitioner's challenge. The presence of a facial statutory ground does not preclude inquiry into retaliatory motive, particularly where—as here—there is evidence that the revocation was driven by political speech and followed by a detention unsupported by any individualized showing of danger to the public or flight risk. *See Nieves v. Bartlett*, 587 U.S. 391, 402 (2019) (stating probable

10

cause defeats retaliation claim in § 1983 context unless "otherwise similarly situated individuals not engaged in the same sort of protected speech had not been arrested"). Petitioner identifies other international students who have not been taken into custody even though DHS terminated their SEVIS records—some without explanation and others with the same termination reason as Petitioner: "Individual identified in criminal records check and/or has had their visa revoked." (*See* Doc. No. 24 at 10; Doc. No. 1-6.)

Moreover, even accepting the assertion in the March 23, 2025 DOS memo that Petitioner's visa revocation was premised on his 2023 misdemeanor disorderly conduct charge, that crime does not appear to support removability under 8 U.S.C. § 1227 and, standing alone, does not authorize revocation under § 1201(i) absent a valid and properly articulated statutory basis.[2]

Finally, the Government invokes *Harisiades v. Shaughnessy*, 342 U.S. 580 (1952), to argue that noncitizens have diminished First Amendment rights. But Petitioner is not accused of subversive association or violent ideology. His speech—opposing violence in Palestine—falls within the core of protected expression, which extends to noncitizens. *See Bridges v. Wixon*, 326 U.S. 135, 148 (1945) ("Freedom of speech and of press is accorded aliens residing in this country."). The Constitution does not permit immigration

---

[2] The Eighth Circuit has not addressed whether a misdemeanor disorderly conduct conviction, without more, renders a noncitizen removable under 8 U.S.C. § 1227 or justifies detention following visa revocation under 8 U.S.C. § 1201(i). The Government has not identified a ground of removability under § 1227, nor cited authority supporting detention based solely on visa revocation without providing such a ground. While visa revocation may give rise to removal proceedings, ICE's authority to detain remains tied to the statutory grounds of removability. The absence of such a showing here supports the conclusion that Petitioner's detention is not lawfully justified on the present record.

detention to be used as a punitive or suppressive tool against protected speech.

### 2. Fifth Amendment due process violations

Petitioner also challenges the legality of his detention on Fifth Amendment due process grounds. He claims the Government had no lawful basis to arrest or detain him on March 28 and has no lawful basis to keep him detained now. *Zadvydas*, 533 U.S. at 690 (civil detention violates due process unless special, nonpunitive circumstances outweigh an individual's interest in avoiding restraint); *see also Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976) (due process is flexible, and the protections depend on the situation, considering the private interest at issue, the risk of erroneous deprivation of that interest through the procedures used, and the Government's interest). Petitioner's Fifth Amendment claim is clear enough to pass the *Martin* test.

First, to the extent that Petitioner links his Fifth Amendment claim to his First Amendment claim—that is, to the extent that his arrest and detention are in furtherance of the Government's policy of punishing international students who voice pro-Palestinian views—the Fifth Amendment claim is sufficiently clear for the same reasons that the First Amendment claim is sufficiently clear. *See, e.g.*, *Mahdawi*, 2025 WL 1243135, at *11 (recognizing that First Amendment evidence overlaps with Fifth Amendment claim). Petitioner's claim is clear: his arrest and detention are being used for punitive purposes, not to advance the lawful purposes of the federal immigration statutes.

Also, on the facts presented, the Government's use of the automatic stay in Petitioner's case raises a substantial Fifth Amendment claim. The automatic stay provision under 8 C.F.R. § 1003.19(i)(2) does not require any showing of dangerousness

or flight risk. Nor is it subject to immediate review by an immigration judge. It operates by fiat and has the effect of prolonging detention even after a judicial officer has determined that release on bond is appropriate. That mechanism's operation here—in the absence of any individualized justification—renders the continued detention arbitrary as applied. *Cf. Zadvydas*, 533 U.S. at 699–700 (recognizing that removal must be reasonably foreseeable for continued post-removal detention to remain reasonable); *Bridges*, 326 U.S. 135, 152–53 (administrative rules are designed to afford due process and to serve as "safeguards against essentially unfair procedures"). Without introducing evidence, the Government has wholly deprived Petitioner of notice and the chance to rebut its case for continued detention. *Mathews*, 424 U.S. at 348–49 ("The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.")

Executive detention must rest on more than categorical, unsubstantiated, or facially deficient grounds, particularly where the government has not demonstrated with evidence that the detainee poses a danger to the community, presents a flight risk, or is subject to removal based on any criminal or national security ground. Invoking the automatic stay without justifying evidence twists the rule into an unfair and improper procedure, which due process does not permit.

### 3. Administrative Procedure Act violations

Although not constitutional claims, Petitioner also makes a clear case that the Government violated the Administrative Procedures Act, at a minimum, by terminating his SEVIS record. An agency action may be set aside if it is arbitrary, capricious, an

13

abuse of discretion, otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). An action is arbitrary and capricious if the agency fails to examine relevant evidence or articulate a satisfactory explanation. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42–43 (1983). Post-hoc rationalizations from counsel will not suffice; agency action must be upheld, if at all, on the basis articulated by the agency itself. *See id.* at 50. An agency must also follow its own regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954); *see also Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988).

Other district courts considering substantially similar facts have held that SEVIS termination constitutes final agency action, and many have enjoined the practice as unlawful on preliminary review. *See, e.g.*, *Shaik v. Noem*, Civ. No. 25-1584 (JRT/DJF), 2025 WL 1170447, at *3 (D. Minn. Apr. 22, 2025); *Doe v. Noem*, No. 3:25-CV-00042-RGE-WPK, 2025 WL 1203472, at *4–6 & n.1 (S.D. Iowa Apr. 24, 2025) (recognizing that visa revocation is not itself a failure to maintain status that justifies SEVIS termination and collecting recent cases awarding injunctive relief).

Petitioner asserts that his SEVIS record was terminated in furtherance of the scheme to retaliate against his protected speech, with the initial citation to INA § 237(a)(4)(C) being the giveaway that the Government viewed his speech as a foreign policy threat. The Government asserts that the SEVIS record was terminated because Petitioner's visa had been revoked—but visa revocation is not a standalone basis for SEVIS termination. The Government has also apparently reversed course and is no longer terminating SEVIS records in this way. Nonetheless, for purposes of this Order,

14

the clear APA claim reinforces that Petitioner's constitutional claims are clear enough to warrant release pending final adjudication.

### B. Exceptional circumstances

As to the second *Martin* factor, the circumstances surrounding Petitioner's detention are exceptional and warrant special treatment in the interests of justice. He has now been in custody for over a month. The factual record is substantial: an unrefuted IJ finding that Petitioner posed no danger; credible allegations of retaliatory motive following protected speech; and shifting *post hoc* explanations to justify the arrest unsupported by any contemporaneous explanation demonstrating the reason for it.

Petitioner has submitted unrebutted evidence that he suffers from multiple hernias and is experiencing worsening bloody stools, pain, and fatigue while in custody. (Petitioner Decl. ¶¶ 13–25, 50–53; Doc. No. 25; 3d Petitioner Decl. ¶¶ 1–3.) The hernias require surgery to repair, but Petitioner missed the surgical consultation he had scheduled for April 2, 2025. (Petitioner Decl. ¶¶ 22, 25). Petitioner reports that the hernias protrude from his abdomen each time he breathes. (3d Petitioner Decl. ¶ 2.) His treating physician told him he will need emergency treatment if he cannot get the protrusions to recede, and the risk of complications grows while surgery is delayed. (*Id.* ¶ 2–3.)

Furthermore, Petitioner cannot participate in his required coursework, for which he paid tuition, while in custody. Detention also impairs his access to counsel and places him at risk of transfer to a remote ICE facility, which could frustrate meaningful judicial review even if jurisdiction technically remains intact.

Even so, Petitioner's medical issues are an exceptionally significant concern,

15

given that his condition could escalate into a medical emergency each time he breathes. Depending on the time of day or night, whether Petitioner is in close proximity to others, and whether the emergency would render him unable to call for help, it is not clear that medical assistance would be available. To date, Petitioner has only received pain medication while in custody, and medical personnel have declined to reschedule an appointment with his doctor. (*Id.* ¶¶ 5–6.)

These are not ordinary incidents of detention. They are compounded by the Government's failure to identify any individualized ground for removability and its failure to produce the March 22 communication from DHS to DOS that would purportedly reflect the reason for the enforcement action. The IJ's bond order has been effectively nullified by administrative fiat rather than by judicial findings. And Petitioner's continued detention risks undermining the Court's ability to adjudicate his claims meaningfully, particularly if transfer, removal, or a medical emergency occurs before final resolution. While the Eighth Circuit has not expressly defined "exceptional circumstances" in this context, this Court finds that the record here meets that threshold.

## CONCLUSION

Taken together, the facts and circumstances of this case pass the *Martin* test and warrant interim release pending final adjudication of the habeas petition. The Government fails to directly address Petitioner's claim for interim release. Nor does it provide fulsome evidence or declarations rebutting Petitioner's claims of viewpoint-based targeting and retaliation, pretextual shifting of enforcement justifications, or the claims of medical hardship. On this record, the *Martin* threshold is satisfied.

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1. Petitioner Mohammed H.'s claim seeking release on bail pending adjudication is **GRANTED**. Petitioner's other claims remain under review.

2. Petitioner shall be released from custody immediately, subject to the conditions previously imposed by the Immigration Judge, including the $7,500 bond.

3. Release shall be to the custody of counsel or another responsible adult whose identity and contact information have been submitted to the Court and approved within 2 days of this Order.

4. Within 48 hours of this Order, Respondents shall notify the Court of the date and time of Petitioner's release.

Date: May 5, 2025

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge