**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Mohammed H., | Civ. No. 25-1576 (JWB/DTS) |
| Petitioner, | |
| v. | **ORDER**<br>**ACCEPTING IN PART REPORT**<br>**AND RECOMMENDATION OF**<br>**MAGISTRATE JUDGE** |
| Donald J. Trump, *et al.*, | |
| Respondents. | |

Petitioner Mohammed H. moved for an order requiring Respondents to show cause for why they should not be held in contempt for violating the June 17, 2025 Order granting his Petition for a Writ of Habeas Corpus. (Doc. No. 43.)

On February 6, 2026, United States Magistrate Judge David T. Schultz issued a Report and Recommendation ("R&R"), recommending that Petitioner's motion be denied. (Doc. No. 54.) Petitioner timely objected to the R&R on February 20, 2026. (Doc. No. 56.) Respondents have not filed a response to Petitioner's objection. For the following reasons, the objections are overruled in part, and the R&R is accepted in part.

## BACKGROUND

On June 17, 2025, this Court granted Petitioner's habeas petition and ordered that he "shall remain released from custody," subject to previously imposed conditions. (Doc. No. 36 at 17.) That order remained in effect at all relevant times.

On January 15, 2026, despite this Court's prior release order, agents from U.S. Immigration and Customs Enforcement ("ICE") went to Petitioner's residence, arrested

him, and transported him to Fort Snelling for processing. (Doc. No. 51 ¶¶ 4–5.) Petitioner was held in custody for approximately seven hours before being released later that day. (*Id.* ¶ 5.) Respondents concede that this arrest and detention occurred notwithstanding this Court's prior order requiring that Petitioner remain released.

The parties offer materially different accounts of how that violation occurred. Respondents' declarant states that the arresting agents were unaware of the Court's order because it was recorded in a system that was not consulted prior to the arrest. (Doc. No. 51 ¶ 6.) Petitioner, in contrast, states that he informed the agents of the order at the time of arrest and that they indicated they were aware of it but proceeded nonetheless. (Doc. No. 45 ¶¶ 13, 16.) The present record contains no additional evidence describing the systems consulted, the decision-making process leading to the arrest, or any steps taken after the incident to prevent a recurrence.

### DISCUSSION

A district court reviews de novo the portions of an R&R to which specific objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b)(3). Portions not objected to are reviewed for clear error. *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996).

Petitioner does not object to the R&R's analysis of compensatory sanctions, conceding that he seeks no such relief. (Doc. No. 56 at 11.) Nor does the record support coercive sanctions directed at the January 15 detention. Civil contempt sanctions must either compensate for a loss or coerce compliance with an ongoing obligation; they may

not be punitive. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994). Because Respondents released Petitioner the same day, there is no ongoing violation for coercive sanctions to remedy, and compensatory sanctions are unavailable against federal officials in these circumstances. *Coleman v. Espy*, 986 F.2d 1184, 1191–92 (8th Cir. 1993). The R&R is accepted to that extent.

Instead, Petitioner objects to the R&R's determination that no coercive sanctions or prospective relief were warranted. Specifically, Petitioner faults the R&R for simply accepting Respondents' written statements at face value without either holding a hearing or receiving documentary evidence to resolve credibility and other evidentiary issues. On that point, the record does not support final resolution. The relevant question is not whether the past violation can be remedied at this point—it cannot—but whether some forward-looking relief is necessary to ensure compliance with the June 17, 2025 Order.

That question turns on facts that remain disputed or undeveloped. Petitioner's version of the facts is that after he told the arresting agents of his release order, they stated that they knew of the order and arrested him anyway. Respondents' version is that the agents did not know of the order because it did not appear in the systems they consulted before the arrest. These competing accounts present a material conflict as to whether the violation resulted from a breakdown in systems or a knowing disregard of a court order. The answer bears directly on whether Respondents' asserted corrective assurances address the actual cause of the violation.

Even accepting Respondents' account, the record lacks evidence of the protocols and systems used, why the system containing the release order was not consulted, or what

steps—if any—have been taken to prevent a recurrence. Respondents' counsel offers assurances of future compliance, but no documented changes. Assurances alone do not resolve the inquiry. A party's voluntary cessation of challenged conduct does not moot a request for prospective relief unless it is clear the conduct cannot reasonably be expected to recur. *See Phelps-Roper v. City of Manchester*, 697 F.3d 678, 687 (8th Cir. 2012) (applying that standard); *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33 (1963). On this record, it is not possible to determine whether the risk of a future violation has been meaningfully addressed.

Because the need for prospective relief depends on unresolved factual and credibility issues, the R&R is not adopted to the extent it can be read to foreclose further inquiry. Therefore, a limited evidentiary hearing is necessary to determine: (1) whether Respondents were aware of the prior release order at the time of arrest; (2) what systems or processes led to the violation; and (3) what corrective measures, if any, have been implemented to prevent recurrence.

**ORDER**

Based on the R&R of the Magistrate Judge, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1.      Petitioner Mohammed H.'s Objection to the February 6, 2026 Report and Recommendation (Doc. No. 56) is **OVERRULED IN PART** and **SUSTAINED IN PART**.

2.      The February 6, 2026 Report and Recommendation (Doc. No. 54) is **ACCEPTED IN PART**.

3.      Petitioner's Motion for Order to Show Cause (Doc. No. 43) is **DENIED IN PART** to the extent that it seeks compensatory or coercive sanctions for past violations. The remainder of Petitioner's Motion, which seeks prospective sanctions to prevent future violations, will be resolved following an evidentiary hearing.

4.      An evidentiary hearing is set for 10:00 a.m. on May 12, 2026, in Courtroom 7A (STP). The purpose of the hearing is not to revisit the completed detention, but to determine whether additional measures are necessary to ensure compliance with this Court's prior order. The hearing will be limited to the following issues:

   a. Whether any arresting agents were aware of this Court's prior order granting habeas relief at the time of the January 15, 2026 arrest, including any statements made to Petitioner regarding that order, and if they were not aware of the prior order, why not.

   b. What systems, records, policies, or practices were consulted or relied upon in effecting Petitioner's arrest, why the prior order was not identified, and whether that failure reflects a systems or process breakdown.

   c. What steps, if any, Respondents have taken since the arrest to ensure that the prior order is identified and followed in future enforcement actions.

Two weeks before the hearing, the parties must exchange proposed witness and exhibit lists relevant to these limited issues. Any exhibits—including documentary evidence and any available body-worn camera recordings—must be produced at that time. Because the information necessary to address these issues lies largely within Respondents' possession, Respondents must also produce, at that time, the materials and information on which they intend to rely, including records sufficient to identify the officers involved in the January 15, 2026 arrest, the systems or databases consulted prior

5

to the arrest, any records reflecting Petitioner's custody status at that time, and any documentation authorizing the arrest or reflecting steps taken after the incident to prevent recurrence.

No depositions will be permitted at this stage. If, after the exchange of materials, a party believes additional testimony is necessary to resolve the issues identified above, that party may seek leave of court.

One week before the hearing, each side must file final witness and exhibit lists, identifying the specific purpose of each witness. Court orders will issue as needed to limit cumulative or unnecessary testimony, or to require the appearance of additional witnesses or production of additional evidence as necessary to complete the record.

For efficiency, the parties are encouraged to stipulate to admissibility and foundation where possible.

Date: April 20, 2026

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge

6